## THE STATE OF KANSAS V. WALTER BEEBE.

BAIL; RECOGNIZANCE; *Sheriff; Escape from Custody.* Where a person charged with the commission of a criminal offense is at liberty on bail, and his sureties with his consent, but without any copy of the recognizance, deliver him to the sheriff, taking his receipt therefor, *held*, that the sheriff, without having any copy of the recognizance, cannot lawfully hold the accused in custody against his will; and therefore, that the accused in such a case may escape from the custody of the sheriff without committing a felony, and also that any other person may assist him to escape without committing a felony.

### *Appeal from Sedgwick District Court.*

IN October 1873 one Joseph Lowe was arrested upon a warrant charging him with the commission of a felony. He waived an examination, and entered into a recognizance in the sum of $2,000, with two sureties for his appearance to the next term of the Sedgwick district court. On the 8th of December afterward his sureties, "at Lowe's request," (as they testify,) "turned Lowe over to the sheriff verbally, and took the sheriff's receipt for him." The receipt is as follows:

"Received of S. H. K. and R. M. S., sureties on the recognizance of Joseph Lowe, the body of said Joseph Lowe. December 8th, 1873.

"WM. SMITH, Sheriff of Sedgwick Co."

On the 13th of said December Lowe escaped, and the de-

fendant *Beebe* was charged by information with aiding and assisting in such escape. Other facts are stated in the opinion, *infra*. The action against *Beebe* was tried at the December Term 1873 of the district court. Verdict of guilty, and judgment on the verdict. New trial refused, and *Beebe* brings the case here by appeal.

*Tucker & Fisher*, for appellant:

The principal question in the case is, whether Lowe was in the lawful custody of the sheriff at the time of his escape. The facts as disclosed by the evidence are as follows: Lowe was charged with shooting one Wm. Anderson, with intent to kill. Lowe was out on bail. On the 8th of December, before court commenced, at the request of Lowe, his sureties surrendered him to the sheriff and took a receipt for him. This surrender was made by turning him over to the sheriff without delivering any copy of Lowe's recognizance with him. The sheriff then delivered Lowe to one John Nugent, to guard. Nugent was not a deputy, nor sworn bailiff. On the 13th of December Lowe made his escape from Nugent.

We claim, on the part of the appellant, that Lowe was not in the lawful custody of the sheriff at the time of his escape; and if not, then Beebe could not be punished for the crime of assisting him to escape. Sec. 177 of the crimes act refers expressly to aiding persons to escape from the *lawful custody* of the officers or other persons. If the custody of the sheriff was not lawful, then Nugent's could not be. This question of lawful custody involves a construction of §§ 148 and 150 of our criminal code. Sec. 148 provides for the surrender of a principal by his sureties, and requires that they procure *a certified copy* of the recognizance, by virtue of which they can take the principal and surrender him to the sheriff. Sec. 150 requires that the sureties must deliver *such copy*, with their principal, to the sheriff, and the sheriff must acknowledge the surrender in writing. We claim that Lowe was not in the lawful custody of the sheriff for the reason that these sections have not been complied with. The district court instructed

the jury that this surrender was good, and sufficient to warrant the jury in finding that Lowe was in the lawful custody of the sheriff. We think this is not the law of the case. The defendant asked the court to instruct the jury that if they found " from the evidence that Lowe was out on bail, and had been delivered up to the sheriff by his bail, in order to render his custody lawful Lowe's bail must deliver a certified copy of his recognizance to the sheriff with the body of Lowe," which the court refused. We think the instruction asked by defendant embodied the law in the case, and should have been given.

The court seemed to think that the fact that Lowe's surrender was made with his consent, or at his request, would obviate the necessity of a compliance with said §§ 148, 150. Lowe's consent or request in that behalf could certainly make no difference with the appellant in this case. The sheriff should have something to show by what authority he held the prisoner, and in this case it should have been a copy of Lowe's recognizance. Lowe was being guarded by Nugent, who as the evidence shows was not an officer of the law; and he had nothing but the verbal order of the sheriff for Lowe's detention. Unless the sheriff had the lawful custody of Lowe himself, he certainly could not transfer it to a private individual, and one in the pay of Lowe—and the evidence shows that Lowe was to pay Nugent for his time in guarding him. Upon the subject of escapes, we again refer to § 177 of the crimes act, and to 2 Bishop Crim. Law, § 1034. In some cases the principal might be liable, and the aider not, but in this case neither would be liable. If Lowe could not have been punished for an escape, certainly *Beebe* could not for assisting him.

*H. C. Sluss*, county-attorney, for The State:

The point relied upon by the appellant is, that the sureties in the recognizance for the appearance of Lowe did not procure a copy of Lowe's recognizance and deliver it with Lowe to the sheriff. The object of procuring the copy of the recog-

nizance, under § 148 of the criminal code, is, to enable the surety *to take the principal.* Having a *copy*, the surety is armed with evidence of an existing fact which enables him to overcome the will of the principal, and take him without his assent. It is not the copy that gives the power; it is the existence of the fact of the recognizance that gives the power to take and surrender the principal. A certified copy is but evidence of the fact. Without the evidence of the fact, the surety cannot compel the principal contrary to his will; but where the principal comes voluntarily, and requests his surety to surrender him, and voluntarily places himself in the custody of the surety for that purpose, there is no will to overcome—the assent of the principal is obtained. There is no *taking* to be done, and the necessity for the sureties having a copy of the recognizance is obviated by the act of the principal. There is no necessity of evidence of the fact of the recognizance, for that fact the principal admits by his action, and waives all right to demand the production of the copy of the recognizance. Now in such a case, if it is not necessary for the sureties to have a copy of the recognizance in order to accept the principal's voluntary surrender of himself, it is certainly not essential for him to deliver such copy to the sheriff in order to enable the sheriff to accept the surrender from the sureties. Perhaps Lowe might have refused to be taken and surrendered without a copy of the recognizance being produced; but when it is done at his own request, it ought to be considered that he waived the formality.

It is questionable from the language of § 148 whether it is intended to apply where the principal is found in the county where the recognizance is of record, and the proceeding pending; for, independently of this statute, the bail has the right to surrender his principal. The recognizance is of record in the court of the county where the principal must appear. In the other counties of the state it is not. The object of the provision of § 148 was two-fold: to arm the surety with the evidence of his authority in those counties where such authority was not a matter of public record, and also to give immunity

to the principal from an otherwise unauthorized arrest. But it seems reasonable that this immunity is one of the rights which a man may waive. Lowe stood charged with crime. He voluntarily placed himself in custody, and the sheriff had the right to hold him, and that is the test of "lawful custody."

The opinion of the court was delivered by

VALENTINE, J.: The defendant was tried and convicted upon a charge for feloniously aiding a prisoner to escape. It seems that one Joseph Lowe was charged with the offense of assault with the intent to commit murder. He entered into a recognizance for his appearance at the next term of the district court. Afterward, at his own request, he was delivered by his sureties to the sheriff of the county, and the sheriff gave the sureties a receipt therefor. The sheriff then delivered him into the custody of one John Nugent, to be guarded, and by agreement Lowe was to pay Nugent for his services. While in the custody of Nugent he escaped, and the defendant Beebe assisted him to escape by furnishing him with a horse with which to ride away. From the time Lowe entered into said recognizance up to the time he escaped, neither the sureties, nor the sheriff, nor Nugent, ever had any warrant of any kind, or any copy of the recognizance, or any other instrument in writing, for the detention, imprisonment, or custody of said Lowe. Under these circumstances, was the escape a felony? This is a difficult question. It is one upon which good lawyers may differ. It is one upon which we know that good lawyers do differ. We have therefore given the question a very careful consideration. We have searched the text-books, and the reports, for something to throw light upon the subject, but have found nothing. The real question is, whether Lowe escaped from *lawful custody*. Now, there is no ambiguity in the language of the statute upon this subject. The statute plainly enough prescribes what shall be done in such cases in order to place the person charged with the offense in lawful custody. But the difficulty arises in cases where the statute has not been fully complied with. May the

38 —13 KAS.

accused be in lawful custody, although the statute, prescribing how he shall be placed in such custody, has not been complied with? Lowe was at liberty on bail, and no one had any right to restrain him of his liberty except in a particular manner. The statute provides that "When the surety desires to surrender his principal, he may produce [procure] a copy of the recognizance from the clerk, by virtue of which the bail or any person authorized by him may take the principal in any county within the state." (Crim. Code, § 148.) The sureties in the present case did not comply with this statute. They procured no copy of the recognizance from the clerk. The principal however voluntarily surrendered himself to them. But still it can hardly be questioned that if the principal at any time before he was delivered to the sheriff had refused longer to remain in the custody of his bail, and had chosen to depart therefrom, he could have done so legally, and without committing any offense. They could hold him as long as he voluntarily chose to remain with them, but when he chose to depart therefrom they could hold him no longer. After his voluntary surrender to his bail they transferred their custody of him to the sheriff, and, as we are inclined to think, they transferred nothing more. Then had the sheriff any more right to hold said principal in custody than his surety had? While he chose to remain with the sheriff, he was of course in the lawful custody of the sheriff; but when he chose to depart therefrom he was no longer in the lawful custody. The statute provides that "The bail must deliver a certified copy of the recognizance to the sheriff with the principal; and the sheriff must accept the surrender of the principal, and acknowledge it in writing." (Crim. Code, § 150.) Now the bail did not deliver to the sheriff any certified copy of the recognizance; and the sheriff had no such copy, nor any other written authority, by which to hold said Lowe when he escaped from Nugent. Even if we should be of the opinion that the bail impliedly (they did not do so expressly,) authorized the sheriff to procure a certified copy of said recognizance, still the sheriff did not procure the same.

Then what was there to prevent Lowe from escaping, if he chose to do so? There is no authority anywhere given to the sureties on a criminal recognizance to arrest their principal, or to hold him in custody, or to deliver him to the sheriff, without a copy of the recognizance; and there is no authority anywhere given to the sheriff to receive such principal, or to retain him in custody, unless he is also furnished with a copy of the recognizance. If the sheriff can hold a person in custody under such circumstances, without such copy, it is by virtue of some authority not found in the statutes. Under our system of criminal jurisprudence we are of the opinion that no person can be deprived of his liberty on account of some criminal charge against him except by virtue of some written authority therefor, except in cases where the accused may be arrested before any warrant has ever been issued. But even in cases where the accused may be arrested without warrant, he must be immediately taken before a magistrate, and a complaint be filed against him, and a warrant issued wherewith to hold him, or the custody of him would become unlawful. But where a person has been arrested on a criminal charge, and afterward set at liberty on a recognizance, then he is as much entitled to his liberty as he ever was before, and cannot again be deprived of his liberty except by following the law. There can be no excuse for again arresting him, or holding him in custody, without written authority. The sureties may take a certified copy of the recognizance when they execute the same; or they may require ample security from their principal before they become his bail. They have ample time to take every precaution necessary. Hence, we think they ought to follow the law. Before a man can be deprived of his liberty, even the forms of law should be complied with. In such cases even the forms of law become matters of substance. And it would hardly seem that a man should be charged with committing a felony for merely failing to recognize certain proceedings as valid and binding, where the proceedings themselves are not in conformity to law. And of course, if Lowe did not commit a felony in

escaping, Beebe did not commit a felony in assisting him to escape. We have come to the conclusions we have in this case with some doubts; but our conclusions are, that the sheriff could not legally hold Lowe in custody against his will, except by having a certified copy of the recognizance as the law requires, and therefore that Lowe did not commit a felony in escaping, and therefore that Beebe did not commit a felony in assisting him to escape.

The judgment of the court below is reversed, and cause remanded for further proceedings.

BREWER, J., concurs.

KINGMAN, C. J., dissents.