## THE STATE OF KANSAS v. ROBERT WHISNER.

1. PROHIBITORY LAW; *Statements of Witnesses; Limit of Conviction.* Where a county attorney, acting by virtue of the provisions of § 8, chapter 149, Laws of 1885, commonly called the prohibitory liquor law, examines various witnesses, who give their testimony before him, which is reduced to writing and sworn to by them and filed with the information charging the defendant with violations of said chapter 149, and the information so filed is verified by the county attorney on information and belief only, and the names of the witnesses so examined are indorsed upon the information, *held,* that the defendant cannot be convicted of any violations of said act not therein referred to or set forth; and further *held,* that in this case the information and the sworn statements filed with it disclose with great particularity the nature and cause of the accusation made against the defendant.

2. —————— *Due Process of Law.* The phrase "due process of law" means law in its regular course of administration, according to prescribed forms and in accordance with the general rules for the protection of individual rights.

3. PROCEEDING, *by Due Process of Law.* Where a defendant is charged in an information filed against him in the district court with violations of the prohibitory liquor law of the state, and there is filed with the information the sworn statements of several witnesses, whose names are indorsed upon the information, tending to describe and set forth with greater certainty and precision the offenses charged in the information, and the defendant is allowed to appear in the court and defend by counsel, to meet the witnesses against him face to face, and to have compulsory process to compel the attendance of witnesses in his behalf, and is given a speedy public trial, by an impartial jury of the county in which the offenses are alleged to have been committed, the proceeding against him is clearly by "due process of law."

4. —————— *Statements of Witnesses; Complaint Without Cause.* Where the county attorney files with the information the sworn statements of witnesses disclosing the fact that the defendant has committed offenses against the provisions of the prohibitory liquor law, the defendant, upon the trial, has no right to complain that the witnesses making said statements were required to appear by subpena before the county attorney and give their testimony. As to such matter, the defendant stands before the court as if the witnesses had voluntarily appeared and made their statements before the county attorney concerning their knowledge of the offenses he has committed against the provisions of said act.

5. INFORMATION; *Sufficient Verification.* Where the affidavit annexed to an information charging the defendant with violations of the prohibitory liquor law is verified by the county attorney " to the best of his information and belief," and the sworn statements of witnesses are filed by the county attorney with the information, disclosing the fact that offenses have been committed by the defendant against the provisions of said act, as charged in the information, *held,* that the verification sufficiently complies with the requirement of the statute.

6. JURY; *Challenge to Array.* Where twenty-six persons are summoned to appear as the regular panel of petit jurors, and it is affirmatively shown on the part of the defendant on trial for a misdemeanor that two or three of the panel are not eligible to be returned on the jury list, *held,* that the court has ample power to purge the jury without sustaining a challenge to the array; and *held,* further, that in such a case there has not been such a palpable disregard of the statute in selecting and drawing the regular panel of jurors as to require a challenge to the array to be sustained. (*Railroad Co. v. Davis*, 34 Kas. 199.)

7. APPROVED LAWS, *Deposit of.* The governor of the state is required by the statute to cause all bills or acts, which have become laws by his approval, to be deposited in the office of the secretary of state without delay. (Comp. Laws of 1879, ch. 102, art. 1, § 5.)

8. MESSAGE, *Approving Act.* There is no constitutional or statutory law which requires the governor to return to either house of the legislature any bill or act after it has received his approval and signature, and if the governor reports to the house of representatives his approval of a bill, it is simply a matter of courtesy only.

9. ACT, *Unaffected by Subsequent Message.* After an act of the legislature has, in a regular and constitutional mode, passed both branches thereof and has been properly signed by the officers of both houses, and has been regularly presented to the governor for his approval, and he has approved and signed the same without any mistake, inadvertence or fraud, and thereafter has voluntarily deposited it with the secretary of state, as a law of the state, it has passed beyond his control; its *status* as a law has then become fixed and unalterable, so far as he is concerned, and any subsequent message by him to the house of representatives, notifying that body of his approval of the act, but setting forth his objections to certain provisions of the act, and giving his construction thereof, does not qualify or otherwise affect the act, or the validity of his approval.

## *Appeal from Linn District Court.*

ON July 15, 1885, the county attorney of Linn county filed the following information against *Robert Whisner,* (omitting court and title:)

"Whereas, upon a certain inquiry by and before me, lately instituted and carried on at the city of La Cygne, in said Linn county, in the state of Kansas, into and concerning certain violations of an act of the legislature of the state of Kansas, entitled 'An act amendatory and supplemental to chapter 128 of the Session Laws of 1881, being an act entitled 'An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes,' approved March 7, 1885, and of the act to which said act is amendatory and supplemental, to me theretofore duly alleged and notified, the testimony of certain witnesses, to wit, John L. Beckman, John R. Gaines, Gala J. Goss, William L. Michael, Elmer E. Deel, then and there attending, appearing and deposing before me, in obedience to my certain subpena so commanding, theretofore duly issued and served, each of said witnesses having been by me first duly sworn to testify the truth, the whole truth and nothing but the truth, and true answers make to all questions which by me might be propounded touching any violations of the provisions of said acts, or of either of them, and which testimony was then and there reduced to writing, and signed by said witnesses respectively, and is now filed herewith, did and does disclose that one Robert Whisner had committed, at said Linn county, in the state of Kansas, the several certain offenses hereinafter specifically and formally charged as the same are hereinafter charged; and did have and has in his possession at the place hereinafter charged and described, the property hereinafter described, and then and there kept and used and keeps and uses the same for the unlawful purposes hereinafter charged:

"Now, therefore, I, Selwyn Douglas, county attorney of Linn county, in the state of Kansas, in the name and by authority of the state of Kansas, come now here and give the court to understand and be informed that Robert Whisner, at the county of Linn, in the state of Kansas, on the 1st day of May, 1885, without having procured from the probate judge of said county any permit to sell intoxicating liquors, did then and there unlawfully sell and barter spirituous, malt, vinous, fermented and other intoxicating liquors."

[The 2d, 3d, 4th, 5th, 6th and 7th counts are omitted, as they are substantially in the form of the first count, excepting the offenses therein charged are alleged to have been committed on May 30, 1885, on June 13, 1885, on June 15, 1885, on June 17, 1885, and on June 22, 1885, and excepting that the

second and following counts recited that the sale was other than the one last charged.]

" Wherefore, I, Selwyn Douglas, county attorney as aforesaid, in the name and by the authority of the state of Kansas, do pray that a warrant may issue for the arrest of the said Robert Whisner; and that such other and further proceedings may be had as in such cases provided by law.

SELWYN DOUGLAS,
*County Attorney of Linn County, Kansas.*"

" STATE OF KANSAS, LINN COUNTY, ss.— Selwyn Douglas, county attorney of said Linn county, being by me first duly sworn, deposes and says that the foregoing information subscribed by him is true, according to the best of his information and belief; and he further says that no permit has ever been issued to said defendant, Robert Whisner, by the probate judge of said county to sell intoxicating liquors.

SELWYN DOUGLAS.

" Subscribed and sworn to before me, on this 15th day of July, 1885.    [Seal.]    W. A. C. KERMAN,
*Clerk District Court Linn Co., Kansas.*"

The testimony of the following witnesses indorsed on the information, to wit, John L. Beckman, John R. Gaines, Gala J. Goss, William L. Michael and Elmer E. Deel, was reduced to writing and filed with the information. On said 15th day of July, a warrant was issued for the arrest of the defendant, and said defendant, after having been taken into custody, entered into a recognizance for $500 for his appearance at the next term of the court. On July 22, 1885, the defendant made a motion to discharge the recognizance for various reasons, among others, that the information was not verified according to law.

Trial had at the November Term of the court for 1885. Before proceeding to trial, the defendant interposed a challenge to the array of the regular panel of jurors, on the ground that the jury had been illegally impaneled. After the hearing of the evidence, the court overruled the challenge. The defendant also objected to the introduction of any testimony, which objection was overruled. Thereupon, the defendant moved the court to require the state to elect upon which of the several counts in the information it would rely. The court granted the motion, and the state elected to proceed upon the

1st, 2d, 3d, 5th, and 7th counts in the information, and a *nolle prosequi* was entered as to the 4th and 6th counts. The jury returned a verdict of guilty against the defendant, as charged in the information, upon the 1st, 2d and 7th counts thereof, and not guilty as to the 3d and 5th counts. On November 21, 1885, the defendant filed a motion for a new trial, which was overruled. On the same day the defendant filed a motion in arrest of judgment, which was overruled, excepting as to the 7th count, and the court refused to sentence the defendant thereon; but thereafter sentenced the defendant upon the 1st count to pay a fine of $250 and to be imprisoned in the county jail for the period of sixty days; and upon the 2d count to pay a fine of $250 and to be imprisoned in the county jail for the period of sixty days; and that he be adjudged to pay all the costs. The defendant excepted to all the rulings of the court, and brings the case here.

*W. R. Biddle*, and *J. D. Snoddy*, for appellant.

*Selwyn Douglas*, county attorney, and *Blue & Rich*, for The State.

The opinion of the court was delivered by

HORTON, C. J.: The defendant was convicted upon two separate counts of an information, charging him with violations of the provisions of the prohibitory liquor law. He was sentenced to pay fines amounting in all to $500, and to terms of imprisonment aggregating four months in the county jail of Linn county. From the judgment he appeals. It is urged that the information is insufficient, and that the proceedings against the defendant were not by due course of law. In support thereof, it is said that the information did not give to the defendant the nature and cause of the accusation against him, and that the proceeding against him was not by the ordinary course established at the common law. Neither of these points is well taken.

In prosecutions of this character, it is not necessary to state the kind of liquor sold, or the name of the person to whom

sold, for the statute expressly and specifically provides that these things need not be stated. (Laws of 1885, ch. 149, §14; *The State v. Schweiter*, 27 Kas. 499; *The State v. Sterns*, 28 id. 154; *The State v. Olferman*, 29 id. 502; *The State v. Shackle*, 29 id. 341; *The State v. Brooks*, 33 id. 708.) In this case, however, the defendant had no reason to complain of being ignorant as to the offenses he was called upon to defend. The testimony of the principal witnesses as to sales of intoxicating liquors made by him was reduced to writing and filed with the information. Therefore, before the trial began, he was notified that John Beckman, whose name was indorsed upon the information as a witness, had testified that he had frequently drank whisky and beer in his saloon at different times since March 10, 1885; and that about the first of May, 1885, John Gaines treated him in the saloon to a glass of whisky. He was also notified by the written testimony that John Gaines, whose name was upon the information, had testified that during the spring and summer of 1885 the defendant was keeping a billiard saloon in La Cygne, and that about May 1, 1885, he bought of him, in his saloon, two glasses of whisky, which he poured out; and that about June 15, 1885, he bought of him, in the same saloon, a drink of whisky and cider mixed together, and at the same time saw other parties get and drink the same kind of mixture. Other witnesses, whose names were upon the information, had also testified to specific sales of intoxicating liquors made by the defendant in his saloon in 1885, and before the filing of the information, and also the kind of intoxicating liquors sold by him at said times. Of course the defendant had the right to suppose that these witnesses would testify upon the trial to the same facts set forth in the testimony filed with the information. Therefore he was given fair notice of the offenses charged against him; of the kind of intoxicating liquors sold by him; and when he sold the same and to whom he sold the same. In this case, the letter and spirit of §10 of the bill of rights were complied with, as the defendant was informed of

the nature and the cause of the accusation against him with great particularity.

An attempt is made to question the constitutionality of § 8 of said chapter 149, giving county attorneys power to subpena and examine witnesses concerning violations of that act. From the record, however, this question· is not before us for decision. None of the witnesses who were subpenaed and examined before the county attorney of Linn county on July 13, 1885, concerning the violations of the provisions of the prohibitory liquor law by the defendant, are here complaining, and the defendant has no right to complain for them. He stands before the court in reference to such matter as if all the parties to the statements filed with the information had voluntarily appeared before the county attorney, and had made before him, at their own instance, the statements. The county attorney clearly had the right, for the benefit of the defendant, to file with his information a bill of particulars, or any sworn statements, showing what specific offenses he intended to charge, when he verified the information. All of this enabled the defendant to prepare his defense, and after such statements or evidence had been filed with the information, the defendant could not be convicted of any offense not therein referred to or set forth. ( *The State v. Brooks,* supra; *The State v. Clark,* 34 Kas. 289.) It has already been decided by the supreme court of the United States, in *Foster v. Kansas,* 112 U. S. 201, that the prohibitory liquor law is not repugnant to the constitution of the United States; neither is it in conflict with any of the provisions of the constitution of this state. (*Prohibitory Amendment,* 24 Kas. 700; *Intoxicating-Liquor Cases,* 25 id. 751; *The State v. Schweiter,* supra; *The State, ex rel., v. Foster,* 32 Kas. 14.) And we can perceive no fundamental rights in that system of jurisprudence, of which ours is derivative, which have in any way been disregarded. The words "due process of law" do not mean and have not the effect of limiting the powers of the state to prosecutions for crime by indict-

*4. Statements of witnesses; complaint without cause.*

*1. Prohibitory liquor law; statements of witnesses; limit of conviction.*

*2. Due process of law.*

ment, "but these words do mean law in its regular course of administration, according to prescribed forms, and in accordance with the general rules for the protection of individual rights." (*Hurtado v. The People*, 110 U. S. 516; *Walker v. Sauvinet*, 92 id. 90–93.) The law authorizing the filing of informations in such a case as this, is not in conflict with our constitution, or the constitution of the United States. (*The State v. Barnett*, 3 Kas. 250; Cooley on Constitutional Limitations, 5th ed., 376; *Kalloch v. Superior Court*, 56 Cal. 229; *Ex parte Wilson*, 114 U. S. 417.)

A sufficient information was filed against the defendant; with the information was filed the sworn statements of the important witnesses whose names were indorsed thereon. Thereby the defendant was fully apprised of the nature of the charges against him, so that he might know what he was to answer. The proceeding against him was upon inquiry; he was heard before he was condemned, and no judgment was rendered until after trial. Therefore, there is no force whatever in the assertion "that the proceeding was not by due process of law."

3. Proceeding by due process of law.

Section 9 of said chapter 149 provides that when a county attorney files a complaint or information with a statement of any witness that intoxicating liquors are being unlawfully sold, the information may be verified by the county attorney upon information and belief. Sec. 67a of the criminal code, Comp. Laws of 1879, reads:

"When an information in any case is verified by the county attorney, it shall be sufficient if the verification be upon information and belief."

It is insisted that as the verification by the county attorney to the information says the same "is true according to the best of his information and belief," it does not comply with the requirement of the statute, and therefore the information is not verified. We think the verification a sufficient compliance with the statute. A person who makes such a verification imports that he has information and is entitled to entertain the belief he expresses,

5. Information; sufficient verification.

and when he swears "to the best of his information and belief," he swears that he has information and belief. (*Roe v. Bradshaw*, Ct. of Exchequer, vol. 1, p. 106.)

Upon the trial, the defendant interposed a challenge to the array of the regular panel of the jurors, on the ground that the jury had not been selected from the list of tax-payers for each township for the previous year, 1884, according to law. The challenge was overruled, and we think rightly.

6. Jury; challenge to array. Of the twenty-six persons summoned to appear, two, Faber and Coffin, seemed to have been clearly ineligible. These were discharged by the court. Another juror, G. W. Platt, was a resident of Paris township when the list of jurors was returned, and was not on the assessment roll of that township. At the time of the trial he had lived in Paris township only one year, but had lived in Lincoln township, in Linn county, over sixteen years, and was on the assessment roll of Lincoln township in 1884. The neglect or refusal of officers to comply with the statute in the listing and selection of jurors, must be affirmatively shown; and as in this case only three persons were upon the panel drawn as jurors who were not eligible to be returned on the jury list, we do not think there was such a palpable disregard of the statute as to require the challenge to the array to have been sustained. (*A. T. & S. F. Rld. Co. v. Davis*, 34 Kas. 199.) In the case of *The State v. Jenkins*, 32 Kas. 477, the jury list for 1883 was drawn directly from the assessment rolls of 1883, not from the preceding year, 1882, at all.

Finally, it is claimed that said chapter 149 is not a law of the state: this upon the alleged ground that it has never received the approval of the governor, that his objections thereto were never considered, and that the bill was never passed by a vote of two-thirds of each house, notwithstanding such objections. The facts are these: The act in question, known as house bill No. 367, entitled "An act to prohibit the manufacture and sale of intoxicating liquors," etc., having in the regular and constitutional mode passed both houses of the legislature, and having been properly signed by the officers

of both houses, was, on March 7, 1885, regularly presented to the governor for his approval; on that day he approved and signed the same, and deposited it at ten o'clock of said March 7th, with the secretary of state. Subsequently, the governor sent a message to the legislature stating that he had approved house bill No. 367, but in his message he made objections to several sections of the bill, and attempted to give his own construction of some of the provisions thereof. It is very doubtful whether his interpretation of the act can be sustained. (House Journal of 1885, pp. 1221–1222.)

Upon this state of facts, we are clearly of the opinion that the act was properly approved and signed by the governor, and is a law. The constitutional provision bearing on the subject is § 14 of article 2, and is in these words:

"Every bill and joint resolution passed by the house of representatives and senate, shall, within two days thereafter, be signed by the presiding officers, and presented to the governor; if he approve, he shall sign it; but if not, he shall return it to the house of representatives, which shall enter the objections at large upon its journal, and proceed to reconsider the same. If, after such reconsideration, two-thirds of the members elected shall agree to pass the bill or resolution, it shall be sent, with the objections, to the senate, by which it shall likewise be reconsidered, and if approved by two-thirds of all the members elected, it shall become a law. But in all such cases the vote shall be taken by yeas and nays, and entered upon the journals of each house. If any bill shall not be returned within three days (Sundays excepted) after it shall have been presented to the governor, it shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent its return, in which case it shall not become a law."

This requires the governor, if he does not approve a bill, to return it to the house of representatives, which shall enter the objections at large upon its journal, and proceed to reconsider the same. By the provisions of article 4, ch. 102, statutes of 1879, the secretary of state is charged with the safe-keeping of all enrolled bills and resolutions, and also of the laws of the state; and § 5 of article 1 of said chapter 102 spe-

cifically directs that the governor "shall cause all acts and
joint resolutions which have become laws or
taken effect by his approval or otherwise, to be
deposited in the office of the secretary of state without delay."
There is no constitutional or statutory law which requires the
governor to return to either house of the legislature any bill
after it has received his approval and signature,
nor is such the practice. As a matter of courtesy,
the governor reports, through his private secretary, to the
house of representatives his approval of the bill. This, and
nothing more. The bill in this case was never returned by
the governor to the house of representatives, and the message
which he transmitted to the house, subsequently to his ap-
proval, was never attached thereto or made a part thereof. It
is not claimed that the governor signed the bill through mis-
take, inadvertence, or fraud. On the other hand, the facts
clearly show that he approved and signed the bill voluntarily,
and that he deposited it with the secretary of state as a law of
the state. Therefore after the bill had been approved and
signed by him, and he had deposited the same
with the secretary, it passed beyond his control.
Its *status* then had become fixed and unalterable,
so far as he is concerned. His subsequent message was no
part of his approval or signature, and whether his objections
to the bill and his construction thereof after he had approved
and deposited the same with the secretary of state were good
or bad, is wholly immaterial. The act in controversy was
regularly passed by the legislature, was approved and signed
by the governor, was deposited with the secretary of state, and
therefore has received all the constitutional sanctions required
to give it effect. (Comp. Laws of 1879, ch. 102, articles 1 and
4; Cooley's Const. Limitations, 5th ed., 184–188; *People v.
Hatch*, 19 Ill. 283; State Constitution, article 2.)

The judgment of the district court must be affirmed.

All the Justices concurring.

*(marginal notes: 7. Approved laws, deposit of. — 8. Message approving bill. — 9. Act unaffected by subsequent message.)*