No. 36,756

Jacob Whalen, *Petitioner*, v. Fred Cristell, Sheriff, et al.,
*Respondents*.

(173 P. 2d 252)

Opinion filed October 7, 1946.

*Elisha Scott,* of Topeka, argued the cause for the petitioner.

*Leon W. Lundblade,* assistant attorney general, and *John B. Markham,* county attorney, argued the cause, and *A. B. Mitchell,* attorney general, was on the briefs for the respondents.

The opinion of the court was delivered by

PARKER, J.: The petitioner has been confined in the jail of Labette county on a purported charge of bribery from the 8th day of February, 1946, to the 26th day of August, 1946, without preliminary examination or trial. He seeks relief in this court through habeas corpus charging that he is now illegally and unlawfully deprived of his liberty by the respondent sheriff.

Respondent's sole defense to the claim of illegal incarceration as made is that he holds petitioner in lawful custody by virtue of a duly and legally issued commitment executed by a magistrate.

There is no dispute regarding the contents of the commitment relied on as justification for the petitioner's restraint. It was produced at the hearing. Pertinent portions thereof read:

"WHEREAS, Jacob Whalen has been arrested on complaint of Willis K. Dillenberger for attempt to bribe one Jerold McMullen and has been brought before me, H. W. Burgess, on such charge, which trial has been necessarily postponed upon good cause shown, *to the 25th day of Feb. 1946, at 2 o'clock, in the P. M. noon,* at my office in said Township,

"AND WHEREAS, the said Jacob Whalen has failed to give his recognizance in the sum of two Thousand Dollars, with sufficient securities as required by me.

"YOU ARE THEREFORE COMMANDED TO TAKE and commit the said Jacob Whalen to the jail of Labette County *there to remain until the time fixed for said trial."* (Emphasis supplied.)

Thus it appears that on the date of the hearing of petitioner's application for a writ of habeas corpus he was deprived of his liberty under a commitment which by its terms provided and on its face disclosed he was to remain in jail until February 25, 1946, the date fixed for his preliminary examination and becomes immediately apparent the substantive issue involved is whether the respondent could hold him in custody after that date without additional judicial order or process.

Except for preliminary purposes the statement that under our form of government, guaranteed by both federal and state constitutions, every citizen of this nation possesses an inalienable right to liberty so long as he complies with the law of the land is so uni-

versally understood as to preclude the necessity of making it. Almost equally well known is the fact that to protect such right the 14th amendment to the constitution of the United States directs that no state shall deprive any person of his liberty without due process of law. To insure it our statute (G. S. 1935, 60-2201) provides that every person restrained of his liberty under any pretense whatever may prosecute a writ of habeas corpus to inquire into the cause of his restraint and shall be delivered therefrom when illegal.

Before proceeding further we pause to note that under certain sections of the statute (G. S. 1935, 60-2213 and 60-2214), and our decisions construing them, a petitioner is not entitled in every situation where his detention is unauthorized under the law to release in a habeas corpus proceeding. The sections just mentioned are upheld on the theory the due process clause is served and a party is not illegally restrained of his liberty so long as he can protect that right by appeal or some other statutory remedy. However, without pursuing the subject further, it can be said that both sections and the decisions dealing therewith are not applicable to a decision of petitioner's claim as made by him and added that it must be determined in this proceeding notwithstanding them. When in issue in a habeas corpus proceeding, courts can and should always inquire into and determine questions pertaining to the validity and sufficiency of the commitment on its face to justify the detention and the jurisdiction of the court issuing that process (39 C. J. S. 505, 506, § 27; *In re Bolman,* 131 Kan. 593, 292 Pac. 790). The same holds true in a situation when detention lawful in its inception has became unlawful by reason of some act, omission or event and a party has become entitled to his discharge by reason of its occurrence (25 Am. Jur. 190, § 64; 39 C. J. S. 444, § 13). So, also, it should perhaps be here stated that under such circumstances the right of a petitioner to be discharged depends entirely upon the legality of restraint at the time of the filing of his petition without regard to its legal status on dates prior thereto (39 C. J. S. 443, § 13).

There being no question the relief sought by petitioner is a proper subject for review and determination in a habeas corpus proceeding we proceed to decision of what we have heretofore termed the substantive issue. As we do so it is well to keep in mind there is no room for misunderstanding or argument in this jurisdiction as to

the meaning of the phrase "due process of law." The term was carefully and accurately defined by this court in the case of *State v. Whisner,* 35 Kan. 271, 10 Pac. 852, where it was held:

"The phrase 'due process of law' means law in its regular course of administration, according to prescribed forms and in accordance with the general rules for the protection of individual rights." (Syl. ¶ 2.)

Among other things the code of criminal procedure of this state deals with matters pertaining to the arrest and examination of persons charged with the commission of crime. It sets out in no indefinite terms the procedure to be followed in a situation where it becomes necessary to adjourn a preliminary examination. Two of its sections are especially applicable to the issue involved.

One, G. S. 1935, 62-611, reads:

"Any magistrate may adjourn an examination or trial pending before himself from time to time as occasion shall require, *not exceeding ten days at one time, without the consent of the defendant or person charged,* and to the same or different place in the county as he shall think proper; and in such case, if the party be charged with a capital offense, he shall be committed in the meantime; otherwise he may be recognized in a sum, with sureties to the satisfaction of the magistrate, for his appearance for such further examination; *and for want of such recognizance he shall be committed."* (Emphasis ours.)

The other, G. S. 1935, 62-613, provides:

"When such person shall fail to recognize, *he shall be committed to prison by an order under the hand of the magistrate, stating concisely that he is committed for further examination on a future day,* to be named in the order, and on the day appointed he may be brought before the magistrate by his verbal order to the same officer by whom he was committed or by an order in writing to a different person." (Emphasis ours.)

Note that under the quoted sections when—as here—there is an adjournment, the one accused of crime must be committed by an order under the hand of the magistrate for further examination on a future day.

The rule is the same elsewhere. See 22 C. J. S. 496, § 335, wherein it is stated:

"In case of an examination in which it is necessary to commit accused to jail to await a hearing or pending the examination, a writ of commitment is necessary, setting forth the cause of his detention and why the examination is postponed. However, accused cannot be committed in such a case without first being brought before the magistrate." (See, also, 22 C. J. S. 511, § 350.)

In law the term "commitment" has a well-defined meaning. It is nothing more or less than a judicial order or process by which

a magistrate directs an officer to take a person to prison and hold him there a fixed period of time (22 C. J. S. 510, § 349; 15 C. J. S. 585, Commitment). Once brought before a magistrate it is the order which permits the officer to deprive an accused of his liberty and legally hold him in custody thereafter.

Now in carrying out the mandate of a commitment or judicial order the duty of an officer is purely ministerial (47 Am. Jur. 822, § 3; 57 C. J. 774, § 124). Upon receiving such commitment he can only comply with its terms (41 Am. Jur. 892, § 11). He cannot release a prisoner from jail before the date fixed for his discharge by the magistrate and by the same token, he has no legal right to deprive him of his liberty after such date unless it be by virtue of some other judicial order or process.

Since on the face of the commitment produced by respondent as justification for his detention of the petitioner it appears the time fixed by the magistrate for the latter's detention had passed, and it is conceded he was not being held in custody by virtue of any other judicial order or legal process, we have no difficulty in concluding that on the date of the filing of the application for a writ of habeas corpus petitioner was illegally restrained of his liberty and entitled to an order releasing him from custody.

Support, if in fact it is not specific authority for our conclusion, is found in a noteworthy pronouncement made by this court in the early days of its existence in *State v. Beebe*, 13 Kan. 589. In the opinion in that case it was said:

"Under our system of criminal jurisprudence we are of the opinion that no person can be deprived of his liberty on account of some criminal charge against him except by virtue of some written authority therefor, except in cases where the accused may be arrested before any warrant has ever been issued. But even in cases where the accused may be arrested without warrant, he must be immediately taken before a magistrate, and a complaint be filed against him, and a warrant issued wherewith to hold him, or the custody of him would become unlawful. But where a person has been arrested on a criminal charge, and afterwards set at liberty on a recognizance, then he is as much entitled to his liberty as he ever was before, and cannot again be deprived of his liberty except by following the law. There can be no excuse for again arresting him, or holding him in custody, without written authority. The sureties may take a certified copy of the recognizance when they execute the same, or they may require ample security from their principal before they become his bail. They have ample time to take every precaution necessary; hence we think they ought to follow the law. Before a man can be deprived of his liberty, even the forms of law should be complied with. In such cases even the forms of law become matters of substance." (p. 595.)

In passing, not that it is necessary for disposition of this cause but because habeas corpus cases involving the rights of persons charged with crime prior to preliminary examination so seldom reach courts of last resort, we feel constrained to briefly comment upon one other issue raised by the unusual factual situation existing in the case at bar.

Heretofore we have directed attention to the requirements of G. S. 1935, 62-611. Further reference to its provisions disclose that a magistrate cannot arbitrarily continue the hearing of a preliminary examination for an indefinite period of time. On the contrary, his power to continue such hearing is limited to ten days at one time except in cases where the defendant consents to a longer delay. In addition G. S. 1935, 62-614, requires him to conduct it "as soon as may be." The record reveals the preliminary in this case was continued for more than ten days in the first instance and that thereafter no judicial action was taken with respect to a continuance, or continuances, with the result the accused has been held in jail without any hearing at all for more than six months. We are aware there may be extenuating circumstances which make that action less arbitrary than it appears. For our purpose we concede the point and state our remarks are not directed to what brought the situation about but to its legal result. Even so, it must be conceded that in the disposition of petitioner's cause there has not been substantial compliance with the statutory requirements to which we have just referred.

Turning to 22 C. J. S. 483, § 331, we find the following statement, to which we subscribe:

"A preliminary hearing, or as otherwise called a preliminary examination, is not a trial, in its ordinary sense, nor is the determination thereof a final judgment. It is simply a course of procedure whereby a possible abuse of power may be prevented, and accused discharged or held to answer, as the facts warrant, and, as stated infra § 337, the rules that govern criminal pleading and the scope and import of trial issues and the relevancy of evidence are not applicable. The proceeding is not according to the course of the common law; it is purely statutory, and compliance with the statute is requisite to jurisdiction at every step, and when once begun, does not abate before a final disposition by discharge or commitment."

It is our view that under the foregoing rule, within the meaning of our own definition of "due process" as set forth in *State v. Whisner*, supra, the import of that phrase as found in the 14th amendment to the constitution of the United States, and the force and

effect of the fundamental legal principles of law announced in *State v. Beebe,* supra, the facts of this case clearly present a situation where it must be held with respect to his preliminary examination, aside from what has been heretofore determined, the petitioner is deprived of his liberty without due process of law and entitled to his discharge on that account.

We are not unaware that under section 10 of the bill of rights of our own constitution every person charged with crime is entitled to a speedy trial. Due to the confused state of the record with respect to why petitioner was not given an earlier hearing we are not disposed to labor that question and merely pass it without other comment than the statement much could be said upon the subject.

The writ is allowed and the respondent directed to release the petitioner.