No. 47,960

STATE OF KANSAS, *Appellant,* v. WILLIAM F. BOONE, *Appellee.*

(543 P. 2d 945)

Opinion filed December 13, 1975.

*Tim W. Ryan,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellant.

*John Berglund,* of Clay Center, argued the cause and was on the brief for the appellee.

*John C. Peck,* of Everett, Seaton and Peck, of Manhattan, was on the brief *amicus curiae* for Robert M. Solem and Susan Wilken.

The opinion of the court was delivered by

HARMAN, C.: In this appeal by the state the issue is whether a criminal defendant's rights to due process and equal protection

of the laws under the federal constitution are violated when he is required to submit to preliminary examination before a nonlawyer judge.

The facts in the case are agreed. Appellee William F. Boone was charged with unlawful possession of firearms, a felony under K. S. A. 21-4204 (1) (b). At his preliminary hearing in the Clay county court appellee Boone raised the issue now before us, asserting the judge was not a lawyer and possessed little judicial experience and further that the county attorney prosecuting the action was by statute the legal adviser of the county judge. The county judge overruled appellee's objections to examination before him, conducted a preliminary hearing and bound appellee over for trial in the Clay county district court. Upon arraignment there appellee raised the same objections and moved to dismiss the information filed against him. On June 5, 1975, the district court sustained defendant's motion. This appeal by the state ensued.

We first examine certain statutes pertaining to county courts along with population factors. County courts are established pursuant to K. S. A. 20-802, under which the judge of that court is authorized to conduct a preliminary examination in a criminal case. It may also be noted that a county court judge is a magistrate under the definition stated in K. S. A. 22-2202 (12) (c) and presides over one of a group of courts which exercise limited criminal jurisdiction including the conduct of preliminary investigations (city courts, courts of common pleas and magistrate courts, all with countywide jurisdiction).

Under K. S. A. 20-803 the probate judge of a county also serves as judge of the county court. Certain exceptions to this exist by reason of specially created courts, mostly in our larger counties, with the result there are presently in Kansas a total of ninety-three probate judges who are *ipso facto* county court judges in their respective counties. K. S. A. 1974 Supp. 59-201 outlines the qualifications for probate judge. Among other things it provides:

". . . No person shall be eligible for the nomination, election or appointment to the office of probate judge of any county having a population of more than twenty-four thousand (24,000) and not more than one hundred thousand (100,000) unless such person shall have been regularly admitted to practice law within the state of Kansas, and is at the time of his nomination and election a regularly qualified practicing attorney under said laws. No person shall be eligible for the nomination, election or appointment to the office of probate judge of any county having a population of more than one hundred thousand (100,000) unless such person shall have been regularly admitted to practice

law within the state of Kansas and at the time of his nomination and election is, and has been for not less than five (5) years prior to such nomination and election, a regularly qualified practicing attorney under said laws. . . ."

Under this statute there are presently 22 of our 105 counties in Kansas in which the county court judge is required to be a lawyer because their population is over 24,000. According to data supplied by our state judicial administrator two counties which have less than 24,000 population presently have a lawyer serving as county court judge by reason of special legislation (see K. S. A. 20-1425, 20-1505 and 20-2404) and four others of like population have lawyer magistrates by reason of election. Summing up, 77 county courts are now served by judges who are not lawyers.

We consider next the nature and purpose of a preliminary examination. In Kansas, every person arrested, or served with a summons charging a felony has the right to a preliminary examination before a magistrate, unless such warrant has been issued as a result of an indictment by a grand jury (K. S. A. 22-2902 [1]). This court has repeatedly held that a preliminary hearing is not a trial in the sense that word is ordinarily used (*State v. Bloomer*, 197 Kan. 668, 421 P. 2d 58, cert. den. 387 U. S. 911, 18 L. ed. 2d 631, 87 S. Ct. 1697). The right to a preliminary examination is purely statutory. It is not mandated either by general constitutional privileges (*Sciortino v. Zampano*, 385 F. 2d 132 [CA 2, 1967], cert. den. 390 U. S. 906, 19 L. ed. 2d 872, 88 S. Ct. 820), or the requirements of constitutional due process (*Lem Woon v. Oregon*, 229 U. S. 586, 57 L. ed. 1340, 33 S. Ct. 783).

According to K. S. A. 22-2202 (14) the term "preliminary examination" means a hearing before a magistrate on a complaint to determine if a felony has been committed and if there is probable cause to believe that the person charged committed it. In *State v. Pigg*, 80 Kan. 481, 103 Pac. 121, the purpose of a preliminary hearing was delineated thus:

"The purpose of a preliminary examination is threefold: (1) To inquire concerning the commission of crime and the connection of the accused with it, in order that he may be informed of the nature and character of the crime charged against him, and, if there be probable cause for believing him guilty, that the state may take the necessary steps to bring him to trial; (2) to perpetuate testimony; (3) to determine the amount of bail which will probably secure the attendance of the accused to answer the charge. The right of the state to introduce evidence at a preliminary examination can not be defeated by the accused waiving an examination." (Syl. ¶ 1.)

Accord: *State v. Cox*, 193 Kan. 571, 396 P. 2d 326, cert. den. 380 U. S. 982, 14 L. ed. 2d 276, 85 S. Ct. 1350.

In *State v. Bloomer*, supra, this was said:

"Although the state may have a legitimate interest in holding a preliminary examination, the provision for the same is primarily for the benefit of the accused. It is a protective procedure whereby a possible abuse of power may be prevented (*Whalen v. Cristell*, 161 Kan. 747, 173 P. 2d 252), to the end no person shall be detained for a crime where there is no evidence to support a charge against him. . . ." (p. 671.)

Thus a preliminary examination affords the person arrested as a result of a complaint an opportunity to challenge the existence of probable cause for further detaining him or requiring bail. Also, a preliminary examination can give the accused general information about the nature of the crime charged and apprise him of the sort of evidence he will be required to meet when he is subjected to final prosecution in the district court (*In re Mortimer*, 192 Kan. 164, 386 P. 2d 261). The object of a preliminary examination is not to determine the guilt or innocence of the accused. The examining magistrate has no power to acquit but only the power to discharge from custody. Such discharge is not a bar to another prosecution (*State v. Bloomer*, supra). The magistrate in a felony case has no jurisdiction to arraign the accused or to accept a plea of guilty of the charge (*State v. Talbert*, 195 Kan. 149, 402 P. 2d 810, cert. den. 382 U. S. 868, 15 L. ed. 2d 107, 86 S. Ct. 143). To iterate, a magistrate conducting a preliminary examination serves a limited function—to determine whether a crime has been committed and whether there is probable cause to believe that the accused committed it.

Traditionally the rule has been that unless there is a statutory or constitutional requirement a judge need not be an attorney (see 46 Am. Jur. 2d, Judges, § 8). The challenge here is constitutional, the denial of due process aspect of which we shall first discuss. A basic requirement of due process is the right to a fair trial in a fair tribunal. The argument for the requirement that only a law trained judge can constitutionally conduct a preliminary examination is something like this: A preliminary hearing is a "critical stage" of a prosecution (*Coleman v. Alabama*, 399 U. S. 1, 26 L. ed. 2d 387, 90 S. Ct. 1999); it is now well established as a matter of federal constitutional law that an indigent criminal defendant is entitled to the assistance of counsel in any federal or state proceeding which might result in deprivation of his liberty (*Argersinger v. Hamlin*, 407

U. S. 25, 32 L. ed. 2d 530, 92 S. Ct. 2006); in order for the right to assistance of counsel to be meaningful preliminary hearings should be presided over by judges who are specially skilled in the complexities of the law and can understand and utilize counsel's legal arguments.

Our research discloses that this precise point has been determined by only one appellate court. In *State v. Lynch*, 107 Ariz. 463, 489 P. 2d 697, the defendant contended that a preliminary examination before a justice of the peace who was not a member of the state bar of Arizona or any similar bar association violated his due process rights. The Arizona supreme court rejected that contention, relying on state statutes which did not require justices of the peace to be attorneys and on *Crouch v. Justice of Peace Court of Sixth Precinct*, 7 Ariz. App. 460, 440 P. 2d 1000. In *Crouch* the Arizona court of appeals held that the petitioner was not denied due process of law when his guilt of a misdemeanor was determined by a jury which had been instructed as to the law by a justice of the peace who had not been admitted to the practice of law.

The issue seems to be whether there is a reasonable likelihood or probability that a preliminary examination held before a non-lawyer judge will result in prejudice to the defendant. The fact that judicial error may be made in a proceeding does not imply a denial of due process of law. The fourteenth amendment in its due process and equal protection clauses does not assure uniformity of judicial decisions or immunity from judicial error. Otherwise, every judicial error would present a federal question (*Beck v. Washington*, 369 U. S. 541, 8 L. ed. 2d 98, 82 S. Ct. 955).

A magistrate in Kansas makes a finding of probable cause in a preliminary examination similar to that made by grand jurors in deciding whether to return an indictment and similar to that made by a magistrate in determining whether to issue an arrest warrant (K. S. A. 22-2302). It has never been supposed that these duties were beyond the capabilities of lay persons to perform fairly. Indeed, as to the issuance of warrants the contrary has been held. In *Shadwick v. City of Tampa*, 407 U. S. 345, 32 L. ed. 2d 783, 92 S. Ct. 2119, the issue was whether clerks of municipal courts, who were not lawyers, could properly act as neutral and detached magistrates when they issued arrest warrants for violations of municipal ordinances. In unanimously agreeing that the procedure was proper the court stated:

"Appellant likewise has failed to demonstrate that these clerks lack capacity to determine probable cause. . . . We presume from the nature of the clerk's position that he would be able to deduce from the facts on an affidavit before him whether there was probable cause to believe a citizen guilty of impaired driving, breach of peace, drunkenness, trespass, or the multiple other common offenses covered by a municipal code. There has been no showing that this is too difficult a task for a clerk to accomplish. Our legal system has long entrusted nonlawyers to evaluate more complex and significant factual data than that in the case at hand. Grand juries daily determine probable cause prior to rendering indictments, and trial juries assess whether guilt is proved beyond a reasonable doubt. The significance and responsibility of these lay judgments betray any belief that the Tampa clerks could not determine probable cause for arrest." (pp. 351-352.)

Similarly, appellee in the case at bar has failed to demonstrate that nonlawyer judges are incapable of determining probable cause fairly, impartially and correctly at a preliminary examination. A like conclusion could be made here as in *Shadwick*:

"What we do reject today is any *per se* invalidation of a state or local warrant system on the ground that the issuing magistrate is not a lawyer or judge. Communities may have sound reasons for delegating the responsibility of issuing warrants to competent personnel other than judges or lawyers. . . . States are entitled to some flexibility and leeway in their designation of magistrates, so long as all are neutral and detached and capable of the probable-cause determination required of them." (pp. 352, 354.)

Considering the limited purpose of a preliminary hearing and the similarly limited function of the examining magistrate we think a lay person can properly preside over it. In recent years in Kansas training programs have been instituted by this court on a state-wide basis for courts of limited jurisdiction, including those presided over by nonlawyer judges. These programs, which commenced in 1972 and have been continued each year since, have been well attended and well received, particularly by those new at their jobs. Certainly such training is desirable. In the Report of the Kansas Judicial Study Advisory Committee, May, 1974, concerning restructuring and improving our court system, (see 13 Washburn L. J. 271-391) the continued need for well-trained lay magistrates in our more sparsely populated areas is recognized, the recommendation being that magistrates who are not attorneys shall be certified by the supreme court before they sit as such. Our current magisterial court system operates in accord with that philosophy. Our holding is that an accused's right to due process of law is not *per se* infringed because his preliminary examination is conducted by a nonlawyer judge.

K. S. A. 19-704 provides as follows:

"The county attorney shall without fee or reward, give opinions and advice to the board of county commissioners and other civil officers of their respective counties, when requested by such board or officers, upon all matters in which the county is interested, or relating to the duties of such board or officers, in which the state or county may have an interest."

A county court judge is a county officer and since the county attorney also represents the state in preliminary examinations appellee further contends the relationship between the two potentially jeopardizes the independence and neutrality of the county judge so that the due process rights of a defendant in a preliminary hearing are threatened. We think this possibility so slight as to be insubstantial. The statute relied upon by appellee refers to legal advice by the county attorney, when requested, respecting the functions and duties of the respective county officers and manifestly does not mean that a county judge should receive his direction from the county attorney as to what judgment to render in a particular legal proceeding before the judge. Both the county attorney and the county judge are bound by a code of ethics forbidding *ex parte* communication concerning a pending or impending proceeding. See Code of Professional Responsibility, Ethical Consideration 7-35; and Rules Relating to Judicial Conduct, Canon 3A. (4) (Rule 601, 214 Kan. xcv). The relationship does not present a situation violative of due process as is present when the judge has a direct, personal and substantial interest in the outcome of a case before him. In general, the test used to determine whether due process is offended in criminal cases presenting circumstances of potential judicial bias is whether the judge's situation is one ". . . which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused. . . ." (See *Ward v. Village of Monroeville*, 409 U. S. 57, 60, 34 L. ed. 2d 267, 93 S. Ct. 80.) We cannot perceive that the fact the county attorney is the statutory legal adviser to a lay county judge presents a reasonable temptation for the judge sitting as an examining magistrate to favor the state's position prejudicially to that of the defendant. Our holding is that due process is not offended by this situation.

The final question to be determined is whether the fact that an examining magistrate's legal qualifications depend on the popu-

lation of the county creates a classification violative of an accused's right to equal protection of the laws under the fourteenth amendment to the federal constitution. (Here again as in the closely allied due process issue there is no showing persons living in a county with less than 24,000 population have received, or are likely to receive, at the hands of examining magistrates any different treatment from those living in counties with more than 24,000 population. Identifiable prejudice has not been shown.)

Principles respecting the equal protection clause were outlined in *Reed v. Reed*, 404 U. S. 71, 30 L. ed. 2d 225, 92 S. Ct. 251, in this fashion:

". . . [T]his Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " (pp. 75-76.)

Are the differences in qualifications of county judges based on county population reasonable and rational in view of the object of the legislation and extant facts? We have just determined due process is not denied in the use of lay judges in holding preliminary examinations. Beyond this, it has long been established that population and area factors may justify classifications in a court system (*Missouri v. Lewis*, 101 U. S. 22, 25 L. ed. 989; *Salsburg v. Maryland*, 346 U. S. 545, 98 L. ed. 281, 74 S. Ct. 280). As already noted in *Shadwick v. City of Tampa*, supra: "States are entitled to some flexibility and leeway in their designation of magistrates, so long as all are neutral and detached and capable of the probable-cause determination required of them" (407 U. S. at p. 354). In *Whittaker v. Superior Court*, 68 Cal. 2d 357, 66 Cal. Rptr. 710, 438 P. 2d 358, this was stated:

"Legislative classification as to treatment and procedure within a state judicial system according to factors such as geographical area, population, or other relevant considerations, does not deny equal protection of the laws unless such classification is shown to be palpably arbitrary and without a sound basis in reason." (p. 370.)

We have noted some facts pertinent to our county courts served by nonlawyer judges. What about the availability of lawyers to

staff those courts? Currently, according to the annual registration roster on file in the office of the clerk of this court pursuant to rule No. 201 (214 Kan. liii), we have one county in which there is only one attorney engaged in the practice of law; four counties have only two actively practicing attorneys; nine counties have only three, seven counties have but four, while thirteen have either five or six. Some of these registrations include partnerships whose members would be disqualified from taking incompatible positions in the same case. This scarcity of practicing attorneys in our more sparsely populated counties makes apparent the difficulties to be encountered if it were required that all our examining magistrates be attorneys. Drastic changes would be in order—with whatever detriment they may bring. We simply cannot say that the classification under K. S. A. 1974 Supp. 59-201 prescribing certain qualifications of examining magistrates according to geographical and population factors is so palpably arbitrary and unreasonable as to deny equal protection of the laws. We think the contention of denial of equal protection is without merit and we so hold.

The judgment is reversed and the cause remanded for further proceedings.

APPROVED BY THE COURT.