No. 55,116

STATE OF KANSAS, *Appellant,* v. RICHARD T. SHERRY, and EUGENE A. FINLEY, *Appellees.*

(667 P.2d 367)

Opinion filed July 15, 1983.

*R. Michael Jennings,* assistant district attorney, argued the cause, and *Robert*

*T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellant.

*David Michael Rapp,* of Moore, Rapp & Schodorf, P.A., of Wichita, argued the cause and was on the brief for Richard T. Sherry, appellee.

*Daniel E. Monnat,* of Shultz, Fisher, Monnat & Shultz, of Wichita, argued the cause and was on the brief for Eugene A. Finley, appellee.

*Paul J. Morrison,* of Olathe, was on the *amicus curiae* brief for the Kansas County and District Attorneys Association.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal by the prosecution from an order of the court dismissing the information and discharging the defendants. The State contends the trial court erred by (1) declaring K.S.A. 1982 Supp. 22-2902a unconstitutional, and (2) determining that the evidence was insufficient to establish probable cause as to the defendant Finley.

On June 29, 1982, Detective Garcia of the Wichita Police Department, working as an undercover narcotics detective, purchased a small amount of marijuana from Brian Creekmore. After discussing the possibility of Garcia purchasing cocaine, Creekmore gave Garcia his telephone number. On July 1, 1982, Creekmore and Garcia discussed the sale of a gram of cocaine and several pounds of marijuana. The price of the marijuana was discussed, but Creekmore was unable to state the price of the cocaine. Creekmore told Garcia that he and a friend, Brian McCoy, were attempting to contact McCoy's man, Richard, to determine cocaine prices. Creekmore and McCoy would attempt to obtain a sample of the cocaine so Garcia could test it.

July 2, 1982, Garcia telephoned Creekmore and made arrangements to purchase additional marijuana. At the sale Creekmore told Garcia he was still checking on the price of cocaine. Later, on the evening of July 2, 1982, Creekmore called Garcia and told him "they" had the cocaine, ½ gram, and Garcia could buy it. At an agreed meeting place, Creekmore sold Garcia ½ gram of cocaine for $75.00. Garcia told Creekmore he would take the cocaine to Chris (an undercover narcotics detective) and if Chris liked the cocaine they would get back to Creekmore in a few days. Creekmore had arrived and departed the meeting place in a car driven by McCoy.

July 9, 1982, following several days of discussion and other small sales, Creekmore met with Garcia in an attempt to sell Garcia an ounce of cocaine. McCoy was with Creekmore. McCoy

assured Garcia that it would be safe for Garcia to front his buy money to them since they had a shotgun and a .22 if somebody tried to rip off Garcia's money. Garcia refused to make payment before the drugs were delivered and no sale was completed. The parties agreed to get back in touch.

July 12, 1982, Garcia called Creekmore and discussed the purchase of cocaine. Creekmore attempted to allay any fears Garcia had about fronting his money. Creekmore told Garcia that Richard was all right, Garcia could trust Richard and that Creekmore had done business with Richard for a long time. The price of the cocaine was $2,200.00 an ounce. Garcia stated he wanted to purchase two ounces of cocaine. Creekmore called Garcia a few minutes later and told him that an unnamed individual would supply the cocaine to Richard and that Richard would be at the sale. The transaction would be at McCoy's house and only those involved in the sale would be present. Creekmore assured Garcia the cocaine was of the same quality as that purchased on July 2, 88% to 90% pure. Richard would be obtaining the larger quantity in the same manner as the sample purchased July 2, 1982, by Garcia.

In a subsequent call, Creekmore stated he could not reach Richard by phone. Creekmore and McCoy were waiting to hear from Richard and when they reached him they would call Garcia if the deal would go through or not. About an hour later Creekmore called Garcia and told him Richard could only get one ounce and that it would cost $2,250.00. Creekmore further stated that he could get the additional cocaine Garcia wanted the next night or the following week. Garcia could then purchase as much as he wanted because five kilograms were involved. The deal would go down that night at McCoy's house as planned.

Garcia drove to an area near McCoy's house, met Creekmore, and followed him in his car to McCoy's house. As they drove up, Garcia saw a car with several people and children in it leaving through the alley that ran behind McCoy's house. Garcia asked Creekmore who the people were. Creekmore told him they were all right, they were the ones that furnished opium that Creekmore had previously sold Garcia. Creekmore told Garcia he could leave his money in the car if he felt more comfortable doing that. Garcia put the money in the trunk of his car and locked it.

While walking to the back door, Creekmore advised Garcia that the only people that were going to be in the house were Garcia, Creekmore, McCoy, Richard, and one other man. McCoy opened the door and told Garcia to come in, they had the stuff. The three men went through the kitchen into the living room where, in addition to Garcia, there were four other people— Creekmore, McCoy, Richard Sherry and Eugene Finley. Finley and Sherry were seated on the couch across from Garcia. Creekmore and McCoy sat on the same side of the room as Garcia. No one else was in the house. Richard then got up, removed a clear plastic bag with white powder in it from a purple Royal Crown bag. Sherry took the white powder over to Garcia, put it on the coffee table by Garcia's chair, and said, "Here's the stuff." Garcia asked Sherry to cut him a line so he could snort some of the cocaine to determine the quality prior to paying his money. McCoy retrieved a small mirror, Sherry took some powder out of the plastic bag and placed it on the mirror in front of Garcia.

At this point, Garcia asked if the powder on the mirror was the same stuff that he had gotten the last time. Sherry said, "Yeah, he thought it was." Finley said, "Yes, it is." Finley got off the couch, came over to Garcia's location, and watched Sherry cut a line of powder. Garcia then asked for a straw to snort the powder into his nostril. Sherry took a dollar bill and gave it to Garcia, saying, "Here, use this." Creekmore reached and took the bill from Sherry and rolled it into a straw and handed it to Garcia. Hesitating in snorting the powder, Garcia asked if he was going to be able to get some more cocaine either tomorrow night or later in the week. Finley stated, "Yeah." Sherry said he could get as much as he wanted. Police officers then arrived on the scene, arresting the four defendants.

On July 14, 1982, a complaint was filed charging Creekmore with Count I, sale of marijuana on June 29; Count II, sale of marijuana on July 2; Creekmore, Finley, Sherry and McCoy were charged in Count III with the sale of cocaine on July 2; and Count IV, possession with intent to sell cocaine on July 12, 1982.

On September 2, 1982, a preliminary examination was held. The State offered Wichita Police Department laboratory reports on each of the four counts. The defendants all objected to the State's reliance on Chapter 143, 1982 Session Laws of Kansas because it denied them their right of cross-examination. The

court ruled that the officers' testimony identifying the report with the contraband covered by such report was not sufficient proof of the chain of custody and dismissed the complaint as to the defendants. September 3, 1982, the State filed a complaint identical to the one dismissed by the court for insufficient proof of the chain of custody.

October 22, 1982, the court held a second preliminary examination on the complaint. The parties agreed to stipulate to the record of the previous preliminary hearing held on September 2, 1982. The State supplied the chain of custody proof and corrected some prior testimony. The defendant Finley moved to dismiss. The court, as magistrate, overruled the motion and bound the defendants over, Finley on Count IV only. The court conducted the arraignment and then, as the trial judge, sustained Finley's motion to dismiss for the reason that the State did not prove a conspiracy, therefore, the statements of Creekmore were not admitted against Finley, and the evidence to show Finley was acting as an aider and abettor was insufficient since it consisted of only the "two" utterances of the defendant Finley. The court then sustained Sherry's motion to dismiss for the reason that Chapter 143 of the 1982 Session Laws was unconstitutional. The State appeals. Although the trial judge bound the defendants over for trial, in effect he made a finding that no probable cause existed. The standard of review is whether there was probable cause to bind the defendants over for trial. The trial court stated in dismissing the information against Richard Sherry:

"With respect to the defendant Richard T. Sherry, the Court finds that, except for the application of the statute Chapter 143 of the laws of 198—Session Laws of 1982, the evidence is insufficient and the Court finds that that statute is constitutionally deficient under the Constitution of the State of Kansas, and the United States. It lacks procedural safeguards in that no scene is set forth for assuring that the chemists employed by the three agencies mentioned in the statute are qualified for their positions; that they are incumbent in the position that they might be certifying as, and a number of other matters with respect to the matter—to the statute, all of which were raised at preliminary hearing—the right of confrontation, the denial of effective assistance of counsel, and denial of equal protection and due process. On that basis, the Court finds that the evidence is insufficient in the preliminary hearing of Richard T. Sherry and dismisses that case for that reason."

Chapter 143 of the 1982 Session Laws amended K.S.A. 22-2902a. The new statute provides:

"At any preliminary examination in which the results of a forensic examination, analysis, comparison or identification prepared by the Kansas bureau of investigation, the secretary of health and environment, the sheriff's department of Johnson county or the police department of the city of Wichita are to be introduced as evidence, the report, or a copy of the report, of the findings of the forensic examiner shall be admissible into evidence in the preliminary examination in the same manner and with the same force and effect as if the forensic examiner who performed such examination, analysis, comparison or identification and prepared the report thereon had testified in person." K.S.A. 1982 Supp. 22-2902a.

The new statute replaced K.S.A. 22-2902a and 22-2902b, which provided:

"On motion of any party prior to any preliminary examination in which the results of a forensic examination, analysis, comparison or identification prepared by the Kansas bureau of investigation, the secretary of health and environment, the sheriff's department of Johnson county or the police department of the city of Wichita are to be introduced as evidence, the report, or a copy thereof, of the findings of the forensic examiner shall be admissible into evidence in such preliminary examination in the same manner and with the same force and effect as if the forensic examiner who performed such examination, analysis, comparison or identification and prepared the report thereon had testified in person, unless the party adverse to the movant shall demand the presence of such forensic examiner at the time such motion is heard by the court.

"Such motion shall be made and a hearing held thereon at least five (5) days prior to the date of the preliminary examination."

"Upon the filing of such a motion, a copy of each report of the findings of the forensic examiner shall be delivered to the adverse party, together with a statement advising the adverse party of his right to demand the presence of such forensic examiner pursuant to the provisions of K.S.A. 22-2902a. Failure to receive the said copies of said reports at least three (3) days prior to the hearing of said motion shall be grounds for a continuance."

The procedure for admission of the forensic examiner's report, of specified agencies, is to insure a more efficient use of the forensic examiner's time. Kansas is a state large in size and small in population compared to our sister states. A major portion of the population and those qualified as forensic examiners are located in three geographic areas—Kansas City, Topeka and Wichita. The Legislative Research Department's summary of the bill containing the new statute supplies an explanation, and the background, of the statute (Supp. Note, H.B. No. 3037 [1982 Session]):

"Brief of Bill

"H.B. 3037 amends K.S.A. 22-2902a to no longer require the prosecution to file a motion if it intends to introduce a forensic examiner's report at a preliminary

hearing. Such reports would be admissible at the hearing and would have the same force and effect as if the forensic examiner who prepared the report had testified in person. Under current law, the prosecution must file the necessary motion at least five days prior to the preliminary examination. The defendant may demand the presence of the forensic examiner at the hearing of such motion.
"Background

"H.B. 3037 was introduced at the request of the Kansas Bureau of Investigation as an economy measure. Testimony presented to the House Committee indicated that the majority of the forensic examiner's time was spent traveling throughout the state and waiting to testify at a hearing while only 5 percent was actually spent testifying at a court proceeding. This bill would reduce the amount of travel time by not requiring the presence of the forensic examiner at the preliminary examination.

"It was noted that a defendant could compel the attendance of the forensic examiner at the preliminary hearing by the use of the subpoena power if the defendant so desired."

See Vernon's Kansas Stat. Annot. § 22-2902b (1983 Supp.).

Prior to considering the specific challenge to the statute, we should review the guidelines used to determine whether or not a statute is constitutional. *City of Baxter Springs v. Bryant,* 226 Kan. 383, 385-86, 598 P.2d 1051 (1979), sets forth those guidelines:

" 'The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

" 'In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

" 'Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]

. . . .

" 'The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere. [Citations omitted.]' *State ex rel. Schneider v. Kennedy,* 225 Kan. 13, 20-21, 587 P.2d 844 (1978).

"The general rule for reviewing statutes or ordinances enacted pursuant to the police power is stated in *City of Wichita v. White,* 205 Kan. 408, 469 P.2d 287 (1970), as follows:

" 'In reviewing statutes such as these, the court begins with the proposition that all presumptions are in favor of their validity. (*State, ex rel., v. Fairmont Foods Co.,* 196 Kan. 73, 77, 410 P.2d 308; and *Tilley v. Keller Truck & Implement*

*Corp.*, 200 Kan. 641, 438 P.2d 128.) The court does not sit in judgment on the merits of such legislation. If the statute here challenged does not contravene significant constitutional or inherent rights of individuals, if the classification on which it is based is reasonable, if it is within the scope of the police powers of the state, if it is appropriately related to a proper purpose of such police power, the statute is not to be invalidated by the judicial arm of government.' (p. 409.)

"In *State, ex rel., v. Fairmont Foods Co.*, 196 Kan. 73, 76-77, 410 P.2d 308 (1966), we said:

" 'Once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose. [Citations omitted.]

. . . .

" 'The reasonableness of restrictions imposed by the legislature by the exercise of the police power is a judicial matter, and all presumptions are in favor of constitutionality of the act. Within the zone of doubt and fair debate legislation is conclusive upon the court and must be upheld. [Citations omitted.]' "

The constitutionality of K.S.A. 1982 Supp. 22-2902a is directly related to what procedure the Constitution of the United States requires in a preliminary examination, and the nature and purpose of the preliminary examination in Kansas.

The United States Supreme Court discussed the constitutional requirements of a preliminary examination in *Gerstein v. Pugh,* 420 U.S. 103, 112-13, 43 L.Ed.2d 54, 95 S.Ct. 854 (1975). They stated:

"To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible. The classic statement of this principle appears in *Johnson v. United States,* 333 U.S. 10, 13-14 [92 L.Ed. 436, 68 S.Ct. 367 (1948)]:

" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' "

The court held the Fourth Amendment, incorporated into the Fourteenth Amendment, requires the states afford a defendant in a criminal case a timely judicial determination of probable cause as a prerequisite to detention. 420 U.S. at 126. An adversarial hearing is not constitutionally required and the court recognized the potential diversity in procedures among the states:

"Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States." 420 U.S. at 123.

The legislature of each state has the power to create a procedure for preliminary examinations. In Kansas, K.S.A. 22-2902(1) requires that every person arrested on a warrant charging a felony shall have a right to a preliminary examination before a magistrate, unless such warrant has been issued as a result of an indictment by a grand jury. The preliminary examination affords the person arrested as a result of a complaint an opportunity to challenge the existence of probable cause for further detention or for requiring bail. *State v. Boone*, 218 Kan. 482, 485, 543 P.2d 945 (1975), *cert. denied* 425 U.S. 915, *reh. denied* 425 U.S. 985 (1976). The preliminary examination apprises the accused about the nature of the crime charged and the sort of evidence he or she will be required to meet when subjected to final prosecution. *State v. Boone*, 218 Kan. at 485.

The preliminary examination is an important part of Kansas criminal procedure. It is protection for an accused and an instrument for justice. If probable cause is not established at the preliminary examination, no person may be prosecuted for a felony in Kansas, except by grand jury indictment. Although the preliminary examination is very significant, the source of the right to a full adversarial proceeding is statutory. *State v. Boone*, 218 Kan. 482; *State v. Smith*, 225 Kan. 796, 594 P.2d 218 (1979). See 1 Wharton's Criminal Procedure § 144 (12th ed. 1974).

This court reviewed the preliminary examination in Kansas in *State v. Jones*, 233 Kan. 170, Syl. ¶¶ 1, 2, 660 P.2d 965 (1983), stating:

"A preliminary examination is not a trial of the defendant's guilt; it is rather an inquiry whether the defendant should be held for trial.

"The principal purpose of a preliminary examination is the determination of whether there appears (probable cause) a crime has been committed and there is probable cause to believe the defendant committed the crime. The State need not establish guilt beyond a reasonable doubt."

At the preliminary examination the defendant must be present, represented by an attorney unless that right is waived, and the

witnesses examined in the defendant's presence. The defendant has the right to cross-examine witnesses against him and introduce evidence on his behalf. K.S.A. 22-2902. This testimony, if preserved, may be used at the trial of the defendant, thus the requirement that the rules of evidence apply at this stage of the procedure. The quality of the evidence to obtain the complaint/information is not sufficient for the preliminary examination. Only evidence admissible in the trial of the defendant is to be considered by the magistrate. See *State v. Zimmerman & Schmidt,* 233 Kan. 151, 660 P.2d 960 (1983); *State v. Hunter,* 232 Kan. 853, 658 P.2d 1050 (1983). K.S.A. 1982 Supp. 22-2902a, and the constitutional flaws the defendant Sherry alleges are inherent in the statute, must be viewed in light of these principles.

The trial court was incorrect when it ruled that K.S.A. 1982 Supp. 22-2902a violated the defendant's constitutional right of confrontation at the preliminary hearing. There is no constitutional right to allow the accused to confront witnesses against him at the preliminary hearing. *Gerstein v. Pugh,* 420 U.S. at 121-22. The Sixth Amendment right of confrontation is a protection that exists at the trial of the defendant. If the defendant wishes to examine the qualifications of the forensic examiner, the procedure followed in testing the substance, or the results of the test, he may do so by subpoena, bringing the forensic examiner into court pursuant to K.S.A. 22-3214. A defendant may request discovery pursuant to K.S.A. 22-3212 and 22-3213. Defendants also have the right to have similar or other tests performed by their own experts.

Neither is the Sixth Amendment right to counsel devitalized by the new statute. See *Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963), 93 A.L.R.2d 733; *Schoonover v. State,* 2 Kan. App. 2d 481, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978). Counsel may use the methods outlined above to effectively represent a defendant. K.S.A. 1982 Supp. 22-2902a does not deny counsel the opportunity to effectively represent a defendant at the preliminary examination or at trial. See *Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed.2d 387, 90 S.Ct. 1999 (1970).

Defendant Sherry next claims that K.S.A. 1982 Supp. 22-2902a violates the equal protection clause of the Fourteenth Amendment. An equal protection challenge was made to the use of

nonlawyer magistrates in certain counties of this state based on the population of the county. This court in *State v. Boone*, 218 Kan. at 489, stated the relevant principles:

"Principles respecting the equal protection clause were outlined in *Reed v. Reed*, 404 U.S. 71, 30 L.ed 2d 225, 92 S.Ct. 251, in this fashion:

" '. . . [T]hisCourt has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " (pp. 75-76.)

" 'Legislative classification as to treatment and procedure within a state judicial system according to factors such as geographical area, population, or other relevant considerations, does not deny equal protection of the laws unless such classification is shown to be palpably arbitrary and without a sound basis in reason.' (p. 370.)"

There is a sound basis for allowing the introduction of the forensic examiner's report into evidence at the preliminary hearing. The legislative treatment and procedure within the state does not deny equal protection of the laws. Defendants in whose prosecution forensic tests are used must subpoena the examiner to assure an appearance at their preliminary examination. Other defendants will be able to cross-examine the witnesses against them at their preliminary examination, if a witness' testimony is necessary in establishing probable cause. The classification created by K.S.A. 1982 Supp. 22-2902a rests upon the different types of evidence required to prove probable cause. The object of the statute is a more efficient administration of criminal justice. The statutory classification is reasonable and directly related to the object of the legislation.

The defendant contends K.S.A. 1982 Supp. 22-2902a violates the due process clause of the Fourteenth Amendment. Due process emphasizes fairness between the state and the individual dealing with the state, regardless of how other individuals in the same situation may be treated. *Wesley Medical Center v. McCain*, 226 Kan. 263, 265, 597 P.2d 1088 (1979). A basic requirement of due process is the right to a fair trial in a fair tribunal. *State v. Boone*, 218 Kan. 482, Syl. ¶ 2. K.S.A. 1982 Supp.

22-2902a does not deny the defendant a fair trial. Neither does the statute deny the defendant the opportunity to challenge the existence of probable cause at the preliminary examination. K.S.A. 1982 Supp. 22-2902a does not violate the defendant's right to due process. The statute does place the burden on the defendant if he wishes to challenge the test results, but it does not frustrate the purpose of the preliminary examination or deny constitutionally protected rights.

Finally, the defendant Sherry argues the qualifications of the expert forensic examiner are not established when K.S.A. 1982 Supp. 22-2902a is utilized. See K.S.A. 60-456(*b*).

The requirement that the rules of evidence apply at the preliminary examination was incorporated by our legislature, and not mandated by the Constitution of the United States. The Constitution does not forbid the states from authorizing the use of hearsay evidence in determining probable cause at the preliminary examination. *Gerstein v. Pugh,* 420 U.S. at 120. In effect the legislature has required the magistrate at a preliminary examination to take judicial notice of the qualifications of certain forensic examiners, the procedure followed by examiners in performing the test, and the results of that test. The report of the forensic examiner is admitted into evidence at the preliminary examination without the presence of the forensic examiner. The doctrine of judicial notice is based upon obvious reasons of convenience and expediency, and operates to save trouble, expense and time which would be lost in admitting evidence in the ordinary way. Usually such facts do not admit of contradiction.

The federal rules of criminal procedure provide a defendant with the right at the preliminary examination to cross-examine the witness against him. The usual rules of evidence are not applied to a preliminary examination in federal court, and the finding of probable cause may be based on hearsay in whole or in part. 1 Wright, Federal Practice and Procedure: Crim. § 85, pp. 183-84 (2d ed. 1982).

The Iowa Supreme Court in *State v. Kramer,* 231 N.W.2d 874, 880 (Iowa 1975), ruled Iowa Code § 749A.2 (1977) constitutional. The statute, now Iowa Code § 691.2 (1983), is much broader than K.S.A. 1982 Supp. 22-2902a. The statute provides:

"It shall be presumed that any employee or technician of the criminalistics laboratory is qualified or possesses the required expertise to accomplish any

analysis, comparison, or identification done by him in the course of his employment in the criminalistics laboratory. Any report, or copy thereof, or the findings of the criminalistics laboratory shall be received in evidence in any court, preliminary hearing, and grand jury proceeding in the same manner and with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis, comparison, or identification had testified in person. An accused person or his attorney may request that such employee or technician testify in person at a criminal trial on behalf of the state before a jury or to the court, by notifying the proper county attorney at least ten days before the date of such criminal trial."

K.S.A. 1982 Supp. 22-2902a is constitutionally valid. It does not deny a defendant the right to challenge the existence of probable cause, or the opportunity to be apprised of the nature of the crime charged and the sort of evidence he or she will be required to meet when subjected to final prosecution.

The State also appeals the dismissal of the charge against Eugene A. Finley. The trial court dismissed the charge against Finley finding that the threshold required to show conspiracy or acting in concert was not shown by the preliminary hearing evidence. Finley's participation in the crime of possession with intent to sell was based entirely on two utterances of the defendant.

The judge found the evidence at the preliminary examination insufficient to establish probable cause. The prosecution relies heavily upon the testimony of Detective Garcia. He testified concerning the drug sales which occurred on June 29, and July 2, 1982. He testified about the involvement of the defendant Creekmore in those sales, and the negotiations between Creekmore and himself in planning the larger July 12, 1982, sale. He then related the events of July 12, preceding the arrests of Finley, Sherry, Creekmore and McCoy.

The statements dealing directly with the proposed drug sale made at the house preceding the arrests, and testified to by Detective Garcia, are admissible evidence. They are a part of the res gestae. Acts done or declarations made before, during or after the happening of the principal occurrence may be admissible as part of the res gestae where the acts or declarations are so closely connected with it as to form in reality a part of the occurrence. *State v. McDaniel & Owens,* 228 Kan. 172, 176, 612 P.2d 1231 (1980). Here the principal occurrence is the intended drug sale. An example of such a declaration in this case is defendant

Sherry's statement "here's the stuff," when bringing the cocaine to Garcia.

Chief Justice Schroeder discussed res gestae declarations in *State v. Rider, Edens & Lemons*, 229 Kan. 394, 404, 625 P.2d 425 (1981):

"Unsworn declarations received as part of the *res gestae* do not depend for their effect on the credibility of the declarant, but derive probative force from their close connection with the occurrence which they accompany and tend to explain. They are admissible as original evidence, although it is frequently stated that they are received as an exception to the hearsay rule."

See *State v. Roberts*, 223 Kan. 49, 60, 574 P.2d 164 (1977).

Finley does not challenge the admissibility of his two statements at the house on July 12. Finley responded affirmatively to two questions asked by Detective Garcia; the first, if the cocaine was of the same quality as purchased on July 2, and the second, if Garcia could purchase additional cocaine at a later time.

Taking into consideration Detective Garcia's testimony, including Finley's statements and res gestae statements by the other defendants, we find earlier statements by the defendant Creekmore in planning the proposed cocaine sale admissible pursuant to K.S.A. 1982 Supp. 60-460(*i*)(2). The hearsay exception provides:

"As against a party, a statement which would be admissible if made by the declarant at the hearing if  .  .  .  the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination  .  .  .  ."

Justice Fromme analyzed the theory behind the exception:

"The purpose of the statute is to let in testimony by a third person concerning declarations of a defendant's fellow conspirator to prove the defendant's involvement in a crime. However, before such third party statements can be used as evidence against a defendant there must be evidence a conspiracy between the out of court declarant and defendant actually did exist. The section deals with vicarious admissions included in agency relationships. Wharton's Criminal Evidence in discussing the section states:

" 'Where it appears that two or more persons have entered into an agreement to commit a crime—and hence are guilty of conspiracy—any act or declaration of a conspirator during such conspiracy, and in furtherance thereof, is admissible, in a prosecution for the target crime, as substantive evidence against any coconspirator on trial. The theory of admissibility is that each party to an agreement to commit a crime has become an "agent" for the other and has, in effect, entered into a "partnership in crime."  .  .  .'(3 Wharton's Criminal Evidence, § 642, pp. 321-327.)" *State v. Roberts*, 223 Kan. at 59.

K.S.A. 1982 Supp. 60-460($i$)(2) requires only that the statement be relevant to the plan and be made while the plan was in existence. The statute does not specifically require the statement to be in furtherance of the conspiracy. See Gard, Kansas C. Civ. Proc. Annot. 2d § 60-460($i$) (1979); Vernon's Kansas Stat. Annot. § 60-460($i$) (1983 Supp.).

A conspiracy may be established by direct proof, or circumstantial evidence, or both. The conspiracy should first be established prima facie, but it is not always possible when using a great amount of circumstantial evidence. However, the whole of the evidence, without the hearsay statements, must show that a conspiracy actually existed. *State v. Borserine*, 184 Kan. 405, Syl. ¶ 4, 337 P.2d 697 (1959); *State v. Marshall & Brown-Sidorowicz*, 2 Kan. App. 2d 182, 198, 577 P.2d 803, *rev. denied* 225 Kan. 846 (1978). A conspiracy may be inferred from other facts proven. The Court of Appeals has stated:

"To establish a conspiracy it is not necessary that there be any formal agreement manifested by formal words, written or spoken; it is enough if the parties tacitly come to an understanding in regard to the unlawful purpose and this may be inferred from sufficiently significant circumstances.

"While an agreement is a necessary element of a conspiracy, the existence of the agreement need not be proved directly but may be inferred from other facts proved. If one concurs in a conspiracy, no proof of an agreement to concur is necessary to establish his guilt." *State v. Small*, 5 Kan. App. 2d 760, Syl. ¶¶ 2, 3, 625 P.2d 1, *rev. denied* 229 Kan. 671 (1981).

The evidence introduced at the preliminary examination was sufficient to establish a conspiracy, one in which Finley was a participant. Detective Garcia was about to purchase the cocaine handled by defendant Sherry. The statements made by the five men show an awareness of an imminent cocaine purchase. It is very unlikely an innocent bystander would be allowed to witness this type of serious illegal activity. In addition, Finley responded to questions involving the quality of the cocaine and future purchases of the drug. Earlier statements by defendant Creekmore planning the sale are admissible pursuant to K.S.A. 1982 Supp. 60-460($i$)(2) for use against the defendant Finley. See Annot., 46 A.L.R.3d 1148, § 22.

We conclude the evidence produced at the preliminary examination establishes probable cause to believe Finley possessed cocaine with intent to sell. Possession requires having control over the cocaine with knowledge of and the intent to have such

control. Control would mean exercising a restraining or directing influence over the cocaine. *State v. Flinchpaugh*, 232 Kan. 831, Syl. ¶¶ 1, 2, 659 P.2d 208 (1983). Finley did not actually handle the cocaine in Garcia's presence, but from the circumstances and his own statements Finley's possession with intent to sell may be inferred from the evidence presented, or alternatively that Finley was aiding and abetting Sherry.

The evidence need not prove guilt beyond a reasonable doubt, only probable cause. The trial court must draw the inferences favorable to the prosecution from the evidence presented at the preliminary examination. *State v. Jones*, 233 Kan. 170. A judge reweighing the preliminary examination evidence after arraignment and prior to trial must follow the standard for weighing the evidence as required for the preliminary examination. We conclude probable cause was shown.

The case is reversed and remanded with directions to reinstate the complaint against both defendants and for further proceedings in conformity with this opinion.