NOT DESIGNATED FOR PUBLICATION

No. 121,868

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS RAY MIDGYETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed September 10, 2021. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Jason B. Oxford*, assistant county attorney, *Krista Blaisdell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ISHERWOOD, J., and MCANANY, S.J.

PER CURIAM: Nicholas Ray Midgyett appeals his convictions of conspiracy to commit aggravated battery and aggravated battery, two of a number of convictions rising out of an encounter with Ann Hernandez. With respect to his conspiracy conviction, Midgyett claims there was insufficient evidence to support this conviction. With respect to the aggravated battery conviction, he claims the district court erred in refusing to instruct the jury on the lesser included offense of misdemeanor battery.

Midgyett also contends the district court abused its discretion in denying his motion for a mistrial. Finally, he contends that in imposing his sentences the district court

1

violated his constitutional rights under the United States Constitution and under the Kansas Constitution Bill of Rights.

We find no merit in Midgyett's contentions and affirm his convictions and his sentences.

FACTUAL AND PROCEDURAL HISTORY

Midgyett was involved in relationships with both Hernandez and Latasha Nickens. On the day in question, Midgyett was at home in Junction City with Nickens when Hernandez arrived. Midgyett and Hernandez then left in Hernandez' car and drove to Kansas City, returning to Midgyett's house around midnight.

Upon returning home, Midgyett grabbed Hernandez' car keys and went inside. Hernandez followed. A short time later when Hernandez decided to leave, Midgyett told Nickens to grab her, which she did. While Nickens held Hernandez, Midgyett repeatedly struck Hernandez and demanded that Hernandez give him her debit card and PIN. He told Nickens to retrieve his baseball bat, which she did. He then hit Hernandez with the bat. He also told Nickens to get a knife from the kitchen. She did so, and Midgyett took the knife and pointed it at Hernandez, threatening to kill her.

Hernandez tried to escape through a bedroom window, but Midgyett and Hernandez pulled her back in. Eventually, Hernandez gave Midgyett and Nickens her debit card and PIN. Midgyett gave the card to Nickens and told her to go to the ATM and withdraw funds from Hernandez' account. Nickens used the card to withdraw $420 before returning to the house. The next morning, Midgyett and Nickens made Hernandez withdraw additional funds from her account which she turned over to Midgyett. Upon being released, Hernandez reported these events to the police.

2

At the police station Officer Ondre Miles observed that Hernandez' left eye was swollen shut; her temple was swollen; she had multiple scratches, bruises, and abrasions on her body; she seemed disoriented and unsteady on her feet; and one tooth had been knocked out and another tooth was "hanging by a strand of flesh."

The State charged Midgyett with two counts of aggravated battery and conspiracy to commit aggravated battery, along with other crimes involving kidnapping, robbery, assault, criminal threat, and drugs.

Relevant to our inquiry, Nickens testified at trial that Midgyett gave the commands during the incident, and she followed them. Hernandez testified that she suffered a broken eye socket, had multiple bruises on her face and neck, and that Midgyett knocked some of her teeth out and others were so loose that Hernandez had to have them pulled.

The jury found Midgyett guilty of two counts of aggravated battery (by knowingly causing great bodily harm) and conspiracy to commit aggravated battery, along with various charges of kidnapping, robbery, assault, and criminal threat. The jury acquitted Midgyett of the drug charges. The district court then dismissed one count of aggravated kidnapping and one count of aggravated battery, finding them to be multiplicitous.

Midgyett had a criminal history score of A based on his prior convictions. The district court imposed a controlling sentence of 715 months' imprisonment. This appeal followed.

3

ANALYSIS

1.    *Sufficiency of the Evidence of a Conspiracy to Commit Aggravated Battery.*

We first address Midgyett's claim that the evidence was insufficient to convict him of conspiracy to commit aggravated battery.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018) (quoting *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 [2014]).

K.S.A. 2020 Supp. 21-5302(a) defines the crime of conspiracy as "an agreement with another person to commit a crime or to assist in committing a crime." Thus, the crime of conspiracy consists of two elements:  "'(1) An agreement between two or more persons to commit or assist in committing a crime and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy.'" *State v. King*, 308 Kan. 16, 28, 417 P.3d 1073 (2018).

Midgyett only challenges the first element of the crime of conspiracy. He argues that the State failed to prove that he entered into an agreement with Nickens to batter Hernandez. He concedes that the evidence showed that he directed Nickens to pull Hernandez back into the house and otherwise directed her actions, but he argues the mere fact that they acted "in concert does not mean a conspiracy can be inferred."

4

We find no support for this argument. Direct evidence of an agreement is unnecessary to support a conspiracy conviction. Rather, an agreement can be implied by the actions of the parties. As stated in *King*, 308 Kan. at 29:

> "Kansas law does not require the State to prove anything other than a tacit agreement: '"[I]t is enough if the parties tacitly come to an understanding in regard to the unlawful purpose, and this may be inferred from sufficient significant circumstances [Citation omitted.]"' *State v. Williams*, 299 Kan. 509, 529, 324 P.3d 1078 (2014), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Stated another way: '"While an agreement is a necessary element of a conspiracy, the existence of the agreement need not be proved directly but may be inferred from other facts proved. If one concurs in a conspiracy, no proof of an agreement to concur is necessary to establish his guilt."' *State v. Sherry*, 233 Kan. 920, 934, 667 P.2d 367 (1983)."

Based on the evidence described earlier in this opinion and viewing that evidence in the light favoring the State, the prevailing party, it is clear that throughout this incident Nickens and Midgyett came to a tacit understanding to get Hernandez' debit card, compel her to disclose her PIN, and withdraw money from her account. To that end Nickens acted in concert with, and at the behest of, Midgyett to accomplish this illegal scheme. The evidence clearly was sufficient to support Midgyett's conviction for conspiracy to commit aggravated battery.

2.    *The Court's Failure to Instruct on Misdemeanor Battery.*

At trial, the district court instructed the jury on aggravated battery, which requires a showing of the infliction of *great bodily harm* and on the lesser included form of aggravated battery which requires a showing that great bodily harm *can be* inflicted. But the court refused Midgyett's request for an instruction on misdemeanor battery. Under K.S.A. 2020 Supp. 21-5413(b)(1)(B), misdemeanor battery is knowingly causing *bodily harm* (rather than great bodily harm) to another person. Midgyett claims this failure to

5

instruct on misdemeanor battery was an error requiring a reversal of this conviction and a retrial.

Midgyett requested a misdemeanor battery instruction, so his claim of error has been preserved for our review. Our task is to determine if the requested instruction was both legally and factually appropriate, and if so, whether the failure to give the instruction requires reversal. See *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018).

An instruction on misdemeanor battery was legally appropriate because simple battery is a lesser degree of aggravated battery. 308 Kan. at 1457. But the instruction also must be factually appropriate. To be factually appropriate there must be sufficient evidence, viewed in the light favoring Midgyett, to support the giving of the instruction. See *State v. Becker*, 311 Kan. 176, 183, 459 P.3d 173 (2020).

Midgyett argues it was factually appropriate to give the simple battery instruction because the injuries were consistent with what one would expect from a fist fight, which would support mere bodily harm rather than great bodily harm.

We would not characterize Hernandez' injuries as the product of a simple fist fight. Hernandez was physically restrained while Midgyett beat her with his fist and a baseball bat. Great bodily harm is "'more than slight, trivial, minor, or moderate harm, [that] does not include mere bruising, which is likely to be sustained by simple battery.'" *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017). Here, as a result of Midgyett's beating, Hernandez' left eye was swollen shut; she suffered a broken eye socket; her temple was swollen; she had multiple scratches, bruises, and abrasions on her body; one tooth had been knocked out and another tooth was "hanging by a strand of flesh"; and other teeth were so loose that Hernandez had to have them pulled.

6

Nevertheless, our Supreme Court has stated that the difference between harm and great bodily harm is a decision for the jury. *State v. Simmons*, 295 Kan. 171, 177-78, 283 P.3d 212 (2012). Thus, the district court should have left the issue of the severity of Hernandez' injuries to the jury and instructed them on this lesser included crime.

But this does not end the matter. Because the district court's failure to instruct on this lesser included crime did not violate a constitutional right, "'the error is reversible only if [the court] determine[s] that there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."'" *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016).

While Midgyett claims the court erred in not instructing on misdemeanor battery, he does not contend that the evidence was insufficient to support his aggravated battery conviction which was predicated on a showing of great bodily harm.

The jury was instructed on aggravated battery, which requires a showing of knowingly inflicting *great bodily harm*, as well as the lesser included form of aggravated battery, which requires a showing that great bodily harm *can be* inflicted. The jury convicted Midgyett of aggravated battery, which involved knowingly causing great bodily harm to Hernandez. If the jury did not believe Hernandez suffered great bodily harm, it would have rejected the aggravated battery charge that required a showing of great bodily harm and instead chosen the lesser aggravated battery offense based on a finding that while Midgyett could have inflicted great bodily harm on Hernandez, he did not do so. Thus, the jury's verdict was predicated on a finding that Hernandez suffered great bodily harm which Midgyett inflicted on her.

Given this inherent finding of great bodily harm, it would be inconsistent and unbelievable to conclude that there was a reasonable probability that the jury would have selected simple battery if that alternative had been presented to it. The jury had already

7

rejected the alternative that Midgyett knowingly caused injuries to Hernandez that were something less than great bodily harm. Thus, the district court's failure to instruct on misdemeanor battery did not affect the outcome of the trial in light of the entire record and was harmless.

3.      *The Denial of a Mistrial*

Midgyett contends that the district court erred in not ordering a mistrial after Hernandez testified that Midgyett was a member of a gang. In questioning Hernandez at trial, the prosecutor asked, "What would you describe as a big event of August the 1st, 2018?" Hernandez responded, "When I came to pick him up, he was dressed all in red because he was part of a Blood gang, the Bloods." At the bench conference that immediately followed, Midgyett's counsel requested that the court strike the answer and, after further discussion, moved for a mistrial. The district court refused to grant a mistrial but struck Hernandez' answer and instructed the jury to disregard it.

Under K.S.A. 22-3423(1)(c), a district court may declare a mistrial when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." In considering a motion for a mistrial, the district court must determine: (1) whether there was a fundamental failure in the proceeding and (2) if there was, whether it was possible to continue the proceeding without injustice.

We review the district court's ruling on the mistrial motion for an abuse of discretion. *State v. Barlett*, 308 Kan. 78, 88, 418 P.3d 1253 (2018). Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; or (2) is based on an error of law or fact. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 126-27, 431 P.3d 850 (2018). Here, it appears that Midgyett contends the district court's action was arbitrary, fanciful, or unreasonable.

8

Midgyett contends that Hernandez' statement constituted a fundamental failure that made it impossible for the trial to continue without prejudice to him. To determine whether Hernandez' reference to Midgyett's gang affiliation required a mistrial because it made it impossible to proceed with the trial without injustice to Midgyett, the district court had to assess whether the fundamental failure affected Midgyett's substantial rights under our harmless error statutes, K.S.A. 2020 Supp. 60-261 and K.S.A. 60-2105. *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016). Thus, the district court must "'determine if there is a reasonable probability that the error will or did affect the outcome of the trial in light of the entire record.'" 304 Kan. at 39. The district court also had to consider "'whether any damage caused by the error can be or was removed or mitigated by admonition, instruction, or other curative action.'" 304 Kan. at 39.

The district court struck Hernandez' answer. The jurors later were instructed in Instruction No. 1 that they "should consider and weigh everything admitted into evidence" and that they "must disregard any testimony . . . which [the court] did not admit into evidence." In Instruction No. 22 the jurors later were instructed that their "verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." More immediately, the district court admonished the jury to disregard Hernandez' answer. "Generally, we presume juries follow the court's instructions." 304 Kan. at 39. Here, we find no indication in the record that the jury failed to follow the district court's admonition and instructions. Nor does Midgyett direct us to any such indication in the record. Hernandez' statement was a one-time event that was not repeated during the remainder of the trial. See *State v. Sean*, 306 Kan. 963, 989-90, 399 P.3d 168 (2017) (finding district court did not err in finding prejudice could be mitigated when the "testimony amounted to one passing gang reference made by one witness and was never highlighted or dwelled upon by the prosecution").

9

We conclude that there is not a reasonable probability that Hernandez' statement affected the outcome of the trial in light of the record as a whole. The district court did not err in denying Midgyett's motion for mistrial.

4.      *Midgyett's Sentencing Rights Under the United States Constitution and the Kansas Constitution Bill of Rights.*

For his claim under the United States Constitution, Midgyett argues that in arriving at his sentences the district court violated his Sixth and Fourteenth Amendment rights as expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by not submitting the issue of his prior convictions to a jury. The Kansas Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). We are duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its position in *Ivory*. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Our Supreme Court has repeatedly followed *Ivory* so we see no such indication. Thus, Midgyett's claim under *Apprendi* fails.

For his claim under the Kansas Constitution, Midgyett contends that the Kansas Sentencing Guidelines Act (KSGA) is unconstitutional under section 5 of the Kansas Constitution Bill of Rights to the extent that it does not require jury findings regarding his prior convictions for criminal history purposes. This same argument was asserted by the defendant and rejected by our Supreme Court in *State v. Albano*, 313 Kan. 638, 642, 487 P.3d 750 (2021). The court in *Albano* held that "the KSGA provisions authorizing the court to make criminal history findings for purposes of imposing a sentence do not violate section 5 because such judicial findings do not impair the traditional functions of the jury in Kansas criminal proceedings." 313 Kan. at 657. We are duty bound to follow the holding in *Albano* because we have no indication that our Supreme Court is departing from it. Thus, Midgyett's constitutional claim under the KSGA fails.

Affirmed.